IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS—EASTERN DIVISION

| | |
|---|---|
| BRIAN YOST,<br><br>                 Plaintiff,<br><br>v.<br><br>LAKE COUNTY SHERIFF MARK CURRAN, in his official capacity, Lake County Deputy RICHARD FREE, Star No. 10568, and LAKE COUNTY,<br>                 Defendants. | Case No. 14 CV 3816<br><br>Hon. Sara L. Ellis |

## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants Sheriff Mark Curran, in his official capacity, Deputy Richard Free, and the County of Lake move under Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint (Doc # 19). In support, they state as follows:

### I.     PROCEDURAL POSTURE

The Defendants previously moved to dismiss the Plaintiff's initial complaint under R. 12(b)(6), asserting that: (1) the complaint was too threadbare, even under the permissive standards of notice pleading; (2) facts in the public record, which were proper for the court to consider on a motion to dismiss, established probable cause, defeating each count pled; and (3) qualified immunity. When the Defendants presented the motion to the Court, the Plaintiff offered to file an amended complaint in lieu of responding to the motion, and the Court granted that request. (Doc # 17). At the same time, the Court set a briefing schedule for an anticipated second motion to dismiss. (Doc # 17). This brief is that second motion to dismiss.

### II.     INTRODUCTION

In the context of a DUI investigation, the results from a preliminary blow test (PBT) can establish probable cause to arrest where the result comes back equal to or greater than the Illinois statutory limit of .08. In the alternative, probable cause may also be met by the arresting officer's

1

observations, performance of sobriety tests, and determination that the driver is impaired. In his Amended Complaint, Plaintiff introduces the various blood alcohol values implicated in the boat accident he caused, but then tries to minimize the different values, offering various explanations on how they are "false" or might have been lower than stated. Likewise, the Plaintiff introduces the results of Deputy Free's investigation, but then also dismisses those findings as "false."

The Court must accept the Plaintiff's allegations as true at this stage, but "A person's ability to explain away seemingly damning facts does not negate the existence of probable cause even though it might provide a good defense should the case go to trial." *Sroga v. Weiglen,* 649 F.3d 604, 608 (7th Cir. 2011). Amidst the Plaintiff's allegations are blood-alcohol measurements of .036 and .071 and .093. Irrespective of the Plaintiff's theories about why the numbers may be inaccurate, the numbers establish that Deputy Free had probable cause to arrest, thereby defeating the Plaintiff's civil rights case as a matter of law.

## III.  FACTS

The First Amended Complaint (FAC) incorporates the core facts the Defendants asked the Court to consider in their first motion to dismiss, which were three tests for which the Plaintiff gave his consent: (1) a preliminary breath test, followed by (2) a Breathalyzer test, and finally (3) a blood test. The FAC also fleshes out other aspects of the Plaintiff's arrest and prosecution and refers extensively to Deputy Free's police report (see FAC ¶¶ 23; 24; 26; 27; 29; 36; 45). In doing so, the FAC basically remedies the pleading-sufficiency issue the Defendants presented in their initial motion (although the Plaintiff continues to present a misleading recitation of the circumstances surrounding the boating accident he caused). But the probable cause issue remains: do the facts, taken in a light favorable to the Plaintiff, indicate an <u>absence</u> of probable cause? If not, the FAC should be dismissed, because probable cause is a required

element of the Plaintiff's counts for "unreasonable seizure," "unreasonable detention," and malicious prosecution. In relevant part, the Amended Complaint now alleges as follows:

(1) In May 2012, the Plaintiff was involved in a boating accident on Pistakee Lake. (FAC ¶¶ 7–8).

(2) Among other law enforcement officers, Deputy Richard Free responded to the scene and eventually detained, arrested, and caused the Plaintiff's prosecution. (FAC ¶¶ 36; 41–41; 43–45).

(3) The Plaintiff never consented to being seized and no warrant existed for his arrest. (FAC ¶¶ 9–10).

(4) Near the scene of the accident, Deputy Free administered multiple field sobriety tests to the Plaintiff. (FAC ¶ 23).

(5) A preliminary breath test was also administered to the Plaintiff that registered a false reading of .093. The results of the preliminary breath test were less than .08, as demonstrated by the results of the Breathalyzer test taken one hour after the preliminary test. (FAC ¶ 24).

(6) Regarding the field sobriety tests and the preliminary breath test, Deputy Free falsely stated the following things in his police report:

   a. the Plaintiff exhibited outward signs of intoxication, such as an "overwhelming odor of alcohol" (FAC ¶ 19);

   b. the Plaintiff "was slurring his words" (FAC ¶ 20);

   c. the Plaintiff had "spilled an alcoholic beverage on his clothes" (FAC ¶ 21);

   d. the Plaintiff admitted to consuming "a few" drinks at two separate locations prior to his interaction with Free (FAC ¶ 22);

   e. the Plaintiff failed multiple field sobriety tests (FAC ¶ 23);

   f. the test registered .093. (FAC ¶ 24).

(7) Plaintiff was then transported to a police station, where he "voluntarily submitted to a Breathalyzer test," which registered a .071 (FAC ¶ 25–26).

(8) Deputy Free knew but did not put into his report that the test results might be overstated by "at least .005." (FAC ¶ 26).

3

(9) Next, the Plaintiff was transported to a hospital for the purpose of obtaining blood and urine samples, but the results of those samples were not known until June 5, 2012. The results eventually came back as .036, and absent of illegal narcotics. (FAC ¶ 27).

(10) Rather than releasing Plaintiff from custody, Free caused Plaintiff to be falsely charged with multiple criminal offenses. (FAC ¶ 40–41).

(11) In December 2013, the Plaintiff was found not guilty. (The Plaintiff was prosecuted for Aggravated Operating a Watercraft Under the Influence of Alcohol.)

In addition to the facts pled in the Amended Complaint, the Defendants have attached as Exhibit 1 a copy of the police report that the Plaintiff references in his complaint. (The Defendant has redacted personal identifiers such as signatures, address, and date of birth). The report documents that prior to the collision, the Plaintiff had just left a bar on the Chain-of-Lakes called Famous Freddie's. The records show that Deputy Free arrested the Plaintiff for 1) operating a boat while intoxicated and 2) careless operation of a boat. A copy of the citation issued by the Lake County Sheriff's Office is attached to this motion as Exhibit 2. %. (Compare with the allegations at FAC ¶ 36). At the scene of the accident, the Plaintiff voluntarily took a PBT (preliminary breath test), which showed he had a blood alcohol count (BAC) of .091%. (Exhibit 1). A little more than an hour later, the Plaintiff voluntarily submitted to a Breathalyzer test, which showed a BAC of .071%. (Compare with the allegations at FAC ¶ 25–26). A copy of the test result printout is attached to this motion as Exhibit 3. Following that test, and a little more than three hours post-accident, the Plaintiff consented to a blood draw, which showed a BAC of .036%. A copy of the Plaintiff's consent and blood draw results are attached to this motion as Exhibits 4 and 5, respectively. (Compare with the allegations at FAC ¶ 29). The Defendants have also attached as Exhibit 6 the Marine Police report documenting the collision and the fact that the victim suffered broken ribs, a broken leg, a fractured pelvis, a lacerated spleen and lacerations to her face. (Compare with the allegations at FAC ¶ 8). Finally, the

Defendants have attached as Exhibit 7 the Lake County Sheriff Vehicle Tow Report, which documents there was alcohol on the boat being operated by the Plaintiff with empty containers.

## IV.    LEGAL STANDARD

### A. Standard for a Motion to Dismiss and Documents upon which the Court may Rely.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of a complaint and tests whether the complaint states a claim upon which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive such a motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but also the claim must be facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* To meet the plausibility standard, the allegations in a complaint must be sufficient to raise the possibility of relief above the "speculative level." *Bell Atlantic*, 550 U.S. at 554. Here, the Defendants argue that based upon the facts pled in the Amended Complaint as well as the facts contained in the police reports, that Deputy Free had probable cause to arrest the Plaintiff. The Amended Complaint thus fails the plausibility standard.

When ruling on a motion to dismiss, under limited circumstances, a district court may consider facts which are contained outside of the four corners of the complaint. For example, a court may take judicial notice of matter of public record without converting the 12(b)(6) motion into a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000). A court may also consider documents that are referred to in the complaint and are central to the plaintiff's claims. *See Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Such documents are considered part of the pleadings. *Id.*; *see also Busnovestsky*

*v. Kooyumjian,* 2002 WL 1941555, at *1, n.1 (N.D. Ill. 2002) (where the district court considered a criminal complaint for trespass because the plaintiff referred to it in her complaint). A district court may also consider public documents and reports of administrative bodies that are a proper subject for judicial notice. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556 (7th Cir. 2012); *Palay v. United States,* 349 F.3d 418, 425 n.5 (7th Cir. 2003). The Illinois Freedom of Information Act provides that police records are public records and, therefore, the court may recognize them for the purpose of Rule 12(b)(6) motion to dismiss. *Bamberg v. City of Evanston,* 2014 WL 1856748, at *2 (N.D. Ill. 2014).

### B. The Existence of Probable Cause defeats a Section 1983 Claim for False Arrest

The existence of probable cause defeats a Section 1983 claim for false arrest. *Jackson v. Parker,* 627 F.3d 634, 638 (7th Cir. 2010). "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense. A probable cause determination relies on the common-sense judgment of the officers based on the totality of the circumstances." *Id.* (internal quotation marks omitted). The belief that an individual has committed an offense need not rise to the level of certainty. *Seiser v. City of Chicago,* 2014 WL 3907111, at *9 (7th Cir. 2014). Probable cause to arrest is an absolute defense to any claim for false arrest under Section 1983 against law enforcement officers. *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006).

Deputy Free issued a citation against the Plaintiff for operating a watercraft while under the influence of alcohol, as codified at 625 ILCS 45/5-16. This section of the Boat Registration and Safety Act provides in part that:

> A person shall not operate or be in actual physical control of any watercraft within this State while:

6

> (a) The alcohol concentration in such persons' blood or breath is a concentration at which driving a motor vehicle is prohibited under subdivision (1) of subsection (a) of Section 11-501 of the Illinois Vehicle Code; or,
>
> (b) Under the influence of alcohol.
>
> \* \* \* \*

625 ILCS 45/5-16(A)(1). The statute contemplates two difference grounds for prosecuting a DUI. The first prong is a statutory basis that prohibits the operation of a motor vehicle where the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units set forth in §§ 11-501 and 11-501.2 (*see* 625 ILCS 5/11-501.2). In order to apply this prong, either by consent or by warrant, the subject must provide breath, blood or urine for testing.

The second prong recognizes that a person can be "under the influence of alcohol" with a concentration lower than 0.08. Additionally, the second prong permits the State to go forward with a criminal prosecution for DUI where the person refuses to consent to breath, blood or urine testing and the officer does not get a warrant. As the appellate court has written regarding the substantially similar provisions of 625 ILCS 5/11-501, which relate to road vehicles, "a slight impairment which leads to a slight reduction in the motorist's ability to drive is sufficient to support a conviction." *Mills v. Edgar*, 178 Ill. App. 3d 1054, 1057 (4th Dist. 1989). Logically, if such an impairment can suffice for a conviction beyond a reasonable doubt, it easily passes muster under the much less rigorous standard of probable cause. Courts note that it is the probability of criminal activity that establishes probable cause, not proof beyond a reasonable doubt, and that, "Indeed, probable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *People v. Wear*, 229 Ill. 2d 545, 564 (2008).

A recent Seventh Circuit decision explains probable cause in the context of a DUI investigation for purposes of civil rights litigation. *Seiser v. City of Chicago*, 2014 WL 3907111 (7th Cir. 2014). In *Seiser*, the plaintiff was a Chicago police officer who was on a diet and was intent upon consuming extra water. *Id.*, at *1. Inexplicably, rather than using a water bottle, he chose to fill a 1.75 liter T.G.I Friday's Mudslide bottle—one that contained alcohol when originally sold—with water. *Id.* Even more inexplicably, he chose to drink from that bottle while on duty and in uniform, and while driving. *Id.* Citizens observed this and made 911 calls to report him. *Id.*, at *1–2. The officer who investigated the complaint did not observe any signs of intoxication in plaintiff's appearance. *Id.*, at *2. The plaintiff also passed field sobriety tests. *Id.*, at *2. Also, he submitted to a Breathalyzer test, which showed he had zero alcohol in his system, but he claimed that he had revoked his consent and that there had been no probable cause to make him submit to the test. *Id.*, at *3.

An initial issue the court addressed was whether the defendant officers had probable cause to administer the Breathalyzer. *Id.*, at *4. The Court held there was probable cause "Given the eyewitness accounts and the presence of a bottle labeled as containing an alcoholic beverage in Seiser's car, a reasonable person would have believed that Seiser had committed a DUI offense." *Id.*, at *7. To recap: Sieser showed no signs of intoxication, he passed the field sobriety tests, and he did not smell of alcohol to the arresting officer, and yet the officer still had probable cause. The key facts that gave rise to the reasonable suspicion that Seiser had been driving while intoxicated were the witness sightings of him drinking from a liquor bottle while driving and the confirmation by the police that there was an open liquor bottle on the front seat of his car.

## V. **ARGUMENT**

Without question, a PBT result of .091 provides an officer with probable cause to arrest. *People v. Rozela*, 802 N.E.2d 372, 379 (Ill. App. Ct. 2d Dist. 2003). The Plaintiff tries to plead around that damning result by alleging that Deputy Free lied about the test. In the Amended Complaint, Plaintiff alleges that Deputy Free wrote a false police report that included lies about the field sobriety tests and alcohol spilled on Yost's shirt. But the fact remains that Yost was administered three BAC tests, all of which implicated intoxication under 625 ILCS 45/5-16(A)(1)(b), which is a subsection of the statute that doesn't require a BAC of .08. Still more, because one may extrapolate the actual level of a suspect's intoxication at the time of an accident, the .08 per se limit of 625 ILCS 45/5-16(A)(1)(a) was also implicated. *See People v. Ikerman*, 2012 IL App (5th) 110299, ¶ 38 (2012) ("evidence regarding retrograde extrapolation is admissible as long as it is presented by a qualified expert").

In addition, the facts and circumstances known to the police are further documents in their police reports: Yost was involved in an accident with serious injuries to a passenger on the other boat; he was coming from a bar; he was operating a boat in which there was alcohol, including open containers. In *Seiser*, the officer had probable cause based solely upon the fact the officer was drinking from a bottle of alcohol while driving—despite the lack of an odor of alcohol, and despite passing all of the field sobriety tests. Here, discounting the disputed facts (the odor of alcohol, the results of the field sobriety tests), the remaining indisputable facts are that Plaintiff was coming from a bar, his blood and breath tested positive for the consumption of alcohol, Plaintiff was operating a boat with open containers of alcohol, and had just been involved in a serious accident. These facts were sufficient to give Deputy Free probable cause to arrest Plaintiff for operating under the influence under 625 ILCS 45/5-16(A)(1).

The Amended Complaint essentially puts forth an argument that Deputy Free should have made an on-the-spot mathematical DUI calculation, applied a .005 variable to the tests, and then deduced that the results he was getting were legally insufficient. It states in ¶¶ 26: "Free's arrest reports deceptively fail to acknowledge that he knew the results of that specific breathalyzer overstated the results by at least .005. Thus, Free knew the actual results of Plaintiff's breathalyzer test were .066, or less. Moreover, additional variables associated with the Breathalyzer could mean that plaintiff's actual blood alcohol content was actually as low as .043."

That argument does not attack probable cause; rather, it goes to whether there would be proof beyond a reasonable doubt regarding the substance of the charge. Probable cause is a lower standard than reasonable doubt, as shown by the decision in *Seiser* where the officer had probable cause despite no odor of alcohol, the plaintiff's statements that there was only water in the bottle, and the plaintiff's success on field sobriety tests.

Based on the various BAC results that establish probable cause—the PBT, the Breathalyzer, and finally the blood draw—the Plaintiff tries to set forth a separate constitutional claim for his continued seizure following the Breathalyzer test and then the blood test, both of which indicated that the Plaintiff's BAC was below a .08% *at the time of the tests*. Plaintiff argues that once the tests showed a limit below the legal limit, then Deputy Free should have released the Plaintiff. That argument is without merit as the subsequent test results do not defeat probable cause. First, having determined that there is probable cause to arrest, "an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car." *Bernardi v. Klein*, 682 F.Supp.2d 894, 906 (W.D. Wis. 2010) (*quoting Thompson v.*

*Olson*, 798 F.2d 552, 556 (1st Cir.1986)). Once the PBT placed the Plaintiff within the realm of being charged under either § 45/5-16(A)(1)(a) (because the results were over 0.08) *or* § 45/5-16(A)(1)(b) (if the results showed alcohol, but assuming a level below .08), Deputy Free had probable cause to arrest the Plaintiff and he was not required to re-evaluate probable cause after the Plaintiff submitted to the other tests.

This is particularly so because the other BAC tests only further corroborated the probable cause Deputy Free already had. The fact that the Breathalyzer, which was administered more than one hour after the accident, and the blood test, which was conducted more than three hours after the accident, showed a BAC less than .08 did not eliminate probable cause because as time passes, the human body processes the alcohol. For this reason, the theory of retrograde extrapolation is an accepted manner to prove intoxication at the time of the accident. *Ikerman*, 2012 IL App (5th) 110299, ¶ 38. In the recent Supreme Court case *Missouri v. McNeely*, the Court addressed natural metabolization of alcohol in the bloodstream presents a per se exigency, excusing a warrant under the Fourth Amendment. 133 S. Ct. 1552 (2013). In its discussion, the Court recognized that experts can work backwards from the BAC at the time the sample was taken to determine the BAC at the time of the alleged offense. 133 S. Ct. at 1563. This is because "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." *Id.* at 1560.

Here, although the Plaintiff's blood alcohol level dropped below the legal limit after the accident, this natural elimination of alcohol from the body does equate to the elimination of probable cause. It is not an error to admit expert testimony on retrograde extrapolation into a criminal case where the defendant has been charged with aggravated driving under the influence

of alcohol. *People v. Latto*, 710 N.E.2d 72, 81 (Ill. App. Ct. 1st Dist. 1999). This is also a consideration an officer such as Deputy Free could make in deciding whether to arrest Plaintiff for operating under the influence.

## VI. DEPUTY FREE HAD AN INDEPENDENT BASIS TO ARREST THE PLAINTIFF, WHICH ALSO PROVIDED PROBABLE CAUSE TO ARREST.

A claim for false arrest is defeated where, based on the facts known to the officer, there exists probable cause to arrest the plaintiff for any offense for which he may be arrested. *See, e.g., Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013) (probable cause to arrest for disorderly conduct sufficient to defeat claim, even where DUI probable cause was lacking at time of arrest) and *Sroga v. Weiglen*, 649 F.3d 604,608 (7th Cir. 2011)(where the existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim.)

Here, in addition to the OWI charge, the Plaintiff was ticketed for the careless operation of a vehicle. 625 ILCS 45/5-1. The charges were later increased to reckless operation under §45/5-2 based upon the severe injuries to the passenger. (Compare with the allegations at FAC ¶ 13). Careless operation of a watercraft is a Class B Misdemeanor and is an arrestable offense. 17 IL Adm. Code 2010.95(b). Deputy Free had probable cause to arrest Plaintiff for careless operation based upon the fact that Plaintiff was operating a boat which collided within another boat causing great bodily harm to one of the passengers on the other boat; Plaintiff admitted he did not see the other boat prior to hitting it (Exhibit 1); prior to the accident Plaintiff was leaving a bar; there was alcohol on board the boat which the Plaintiff was operating; and the Breathalyzer and blood test showed that the Plaintiff had alcohol in his system. All of these facts taken together gave Deputy Free probable cause to arrest the Plaintiff for careless operation.

## VII. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION ALSO FAILS BECAUSE DEPUTY FREE HAD PROBABLE CAUSE TO ARREST HIM

To state a claim for malicious prosecution, the Plaintiff must show: 1) Deputy Free commenced or continued an original criminal or civil judicial proceeding; 2) the proceeding terminated in favor of the Plaintiff, 3) there was an absence of probable cause for such proceeding; 4) the presence of malice; and 5) damages resulting to the Plaintiff. *Seiser v. City of Chicago*, 2014 WL 3907111, at \*9 (7th Cir. 2104). "As the lack of probable cause is an element of malicious prosecution, evidence demonstrating that there was probable cause to believe the plaintiff committed the offense is a complete bar to the claim." *Id*. With respect to probable cause for malicious prosecution claims, Illinois courts define it as "a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Id.*, at \*9 n.6. For the reasons listed above, as a matter of law, it is not malicious prosecution to prosecute a person who registers three BAC levels in a range that implicates both intoxication under 625 ILCS 45/5-16(A)(1)(b), but also, through extrapolation, the per se limit under 625 ILCS 45/5-16(A)(1)(a). This is particularly so where there is an accident which caused great physical harm to another person, as there was here.

## VIII. DEPUTY FREE IS ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity shields Deputy Free from suit even if the Court indulges the Plaintiff's theory that his BAC was never *factually* above .08 and that no *actual* probable cause existed. This is because under those two erroneous assumptions, *arguable* probable cause still existed, and that is enough to entitle Deputy Free to qualified immunity.

In a false arrest case where there is no probable cause, qualified immunity shields an officer where "a reasonable officer could have mistakenly believed that probable cause existed."

13

*Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). If Deputy Free reasonably but mistakenly believed that probable cause existed, he is entitled to qualified immunity. Here, based upon his observations, the PBT test, the Breathalyzer test, and the blood test, it was reasonable for Deputy Free to believe that the Plaintiff had committed an offense and, for this reason, Plaintiff cannot show a violation of his constitutional rights.

Alternatively, to the extent that Deputy Free is alleged to have violated the Plaintiff's rights by not releasing him after obtaining the Breathalyzer and blood alcohol test results—and such a violation would have to assume that Deputy Free could not rely upon retrograde extrapolation to show that the Plaintiff was intoxicated at the time of the accident—such a purported constitutional violation was not clearly established at the time of the incident. Therefore, Deputy Free is entitled to qualified immunity.

## IX.    <u>CONCLUSION</u>

In trying to explain away the various BAC readings—.036, and .071, and .093—all the Plaintiff does is set forth a set of circumstances under which Deputy Free clearly possessed probable cause to arrest the Plaintiff for boating under the influence of alcohol. Probable cause exists where the facts and circumstances within an officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that an offense has been committed and the suspect at issue committed it. *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949). If we assume that the only facts and circumstances in Deputy Free's knowledge were that (1) the Plaintiff was operating the boat that was involved in the accident and (2) the Plaintiff had alcohol in his system at *any* of the levels cited in the complaint—i.e. anywhere between .036 and .093—then probable cause existed. At the very least, Deputy Free

had *arguable* probable cause to arrest the Plaintiff. Either way, the Amended Complaint fails to state any viable claims.

The Amended Complaint attempts to paint Deputy Free as a terrible liar with some sort of unstated vendetta against the Plaintiff. Without some underlying explanation, this is an inherently implausible storyline. Even still, an "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause," and "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Deputy Free was at the scene of a serious boating accident; he detected alcohol to be involved and was confirmed in his suspicion based on three separate breath or blood alcohol tests. That establishes probable cause to arrest (or to seize, or to detain, or however else the Plaintiff chooses to characterize the Fourth Amendment violation he alleges).

WHEREFORE, the Defendants respectfully request that this Court grant its Motion to Dismiss the Amended Complaint with prejudice and for such other relief that the Court deems just.

Michael G. Nerheim
STATE'S ATTORNEY OF LAKE COUNTY
Janelle K. Christensen (#6220116)
Stephen J. Rice (#6287192)
Assistant State's Attorney
18 N. County St.
Waukegan, IL 60085
(847) 377-3050

Respectfully submitted,
MICHAEL G. NERHEIM
State's Attorney of Lake County

By: /s/Janelle K. Christensen
    Assistant State's Attorney

## CERTIFICATE OF SERVICE

I certify that on August 21, 2014, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at the e-mail address on file with the Court: GBROWNE@eFOX-LAW.COM, Garrett Browne, Ed Fox and Associates, 300 West Adams, Suite 330, Chicago, Illinois, 60606.


/s/ Janelle K. Christensen
Janelle K. Christensen
One of the Attorneys for Defendants


Michael G. Nerheim
State's Attorney of Lake County
Janelle K. Christensen #6220116
Stephen J. Rice #6287192
Assistant State's Attorney
18 N. County Street
Waukegan, IL 60085
(847) 377-3050

16

## LAKE COUNTY SHERIFF'S DEPARTMENT
### SUPPLEMENTARY REPORT

PAGE 1 OF 2

| 1. COMPLAINT NO. |
|---|
| 12-06837 |

| | ☑ FORM USED AS CONTINUATION FOR CURRENT REPORT | ☐ FORM USED TO REPORT FOLLOW UP INVESTIGATION OR SUPPLEMENTAL INFORMATION | DAY | DATE OF THIS REPORT | TIME | NAME OF COMPLAINANT - REPORTING |
|---|---|---|---|---|---|---|
| | 2. | 3. | 4. Saturday | 5. 5/26/2012 | 6. 9:43 PM | 7. Deputy R. Free *10568 |

| 8. KIND OF REPORT CONTINUED | | | 9. CORRECT OFFENSE OR INCIDENT CLASSIFICATION | CHANGED |
|---|---|---|---|---|
| ☐ OFFENSE | ☑ ARREST | ☐ FOLLOWUP OR SUPPLEMENTARY | Operating Under The Influence | ☐ |

| 10. STATUS (CHECK ONE) | | | | 11. IS FURTHER POLICE ACTION REQUIRED? | 12. IF CASE IS CLEARED, HOW CLEARED (USE THIS BOX FOR SNGLEOR FIRST CLEAR-UP OF MULTIPLE CLEAR | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CLD | UNFD | NOT CLD | CLD EXE | ☑ YES ☐ NO | ☑ ARREST PROSECUTE | ☐ REPORT REFERRED TO PROSECUTOR | ☐ COMPLAINANT REFUSED TO PROSECUTE | ☐ STATION ADJUSTMENT | ☐ OTHER EXCEPTIONAL |
| ☑ | ☐ | ☐ | ☐ | | | | | | |

On 26 May 2012 at 2140 HRS, I Deputy Free along with Deputy Michaels, and Deputy Rompala assigned to boat #5971 were dispatched to a boat accident with injuries on Pistakee Lake in Meyers Bay near Famous Freddie's Roadhouse (510 S. Park, Fox Lake, IL 60020). Initial reports from dispatch stated that there were three boats involved and it was unknown if anybody was in the water. Upon arrival we first observed a pontoon boat (IL3194JT) that had extensive damage to its bow area that was about 100 yards northeast of two other boats that appeared to be side by side with one another. As we continued our approach, several people on a white Donzi (witness boat IL 8201KH) began waving their arms to gain our attention. As we approached we soon discovered in the water, clinging to the stern of this boat, a male subject later identified as Bruno Renzulli who was holding on to his wife (Dena Renzulli) who appeared severely injured with an very extensive facial laceration.

During this time we learned that there were no other persons in the water, and relayed the patient information for Fox Lake Rescue. With assistance from Deputy Rompala, I pulled Mrs. Renzulli from the water and had her sit on the gunwale, as I leaned her body back against mine holding her head and neck still until Fox Lake's FD Rescue's boat arrived. After Fox Lake Rescue arrived, we assisted in getting Mrs. Renzulli situated on a back board. Soon after, Mrs. Renzulli was rushed ashore for a waiting ambulance. During this time, Deputy Michaels had spoken with the operator of the Unit # 1 boat (IL3734JM) identified as Brian Yost, who provided his driver's license. Deputy Michaels then advised both boats to go back to Famous Freddie's pier and wait for us to speak with them. After meeting up with boat 5973 (Sgt Kent, Deputy Strand, and Deputy Foy) who was out with the unit #2 boat (IL3194JT) we then headed to Famous Freddie's pier, where Deputy Rompala and I made contact with the operator of boat unit #1 (Yost) as Deputy Michaels was gathering passenger information from unit #1 and the witness boat.

As I spoke with Yost, he explained he was the operator of the boat that struck the pontoon. During this time I could not ignore the overwhelming odor of an alcoholic beverage on Yost's breath as well as his eyes being blood shot and glossy in appearance. As Yost and I conversed, it was soon apparent that he was periodically slurring his words as well. During this time I also took notice that it appeared that Yost had also spilled an alcoholic beverage on his clothes. I then asked Yost how the crash occurred. Yost then stated that after leaving the bar, his friend Megan Murphy asked to operate his boat since the friends she brought were cold. Yost explained that his boat had a cutty cabin. After switching boats, Yost related he motored away from his slip at the pier, and headed in a northwesterly direction. After leaving the no wake area, Yost explained that he throttled up to gain speed, and before going on plane, he somehow struck the pontoon. Yost related that he was going no more that 15 to 25 miles per hour when

| | | 13. CONT. ON CONT. FORM ☐ | 14. ARREST MADE ☑ YES ☐ NO | 15. REPORTING OFFICER WILL FOLLOW UP ☐ YES ☐ NO | 16. WARRANT OBTAINED ☐ YES ☐ NO ☐ DENIED |
|---|---|---|---|---|---|
| Rep | Inft. I.D. # *RF* 10568 | Approving Officer | I.D. # 1553 | DATE: 05/30/12 | TIME: 930 pm |



RECORDS COPY



EXHIBIT
i

## LAKE COUNTY SHERIFF'S DEPARTMENT
### SUPPLEMENTARY REPORT

PAGE 2 OF 2

| 1. COMPLAINT NO. |
| --- |
| 12-06837 |

| ☑ FORM USED AS CONTINUATION FOR CURRENT REPORT | ☐ FORM USED TO REPORT FOLLOW UP INVESTIGATION OR SUPPLEMENTAL INFORMATION | DAY | DATE OF THIS REPORT | TIME | NAME OF COMPLAINANT - REPORTING |
| --- | --- | --- | --- | --- | --- |
| 2. | 3. | 4. Saturday | 5. 5/26/2012 | 6. 9:43 PM | 7. Deputy R. Free *10568 |

| 6. KIND OF REPORT CONTINUED | | | 9. CORRECT OFFENSE OR INCIDENT CLASSIFICATION | CHANGED |
| --- | --- | --- | --- | --- |
| ☐ OFFENSE | ☑ ARREST | ☐ FOLLOWUP OR SUPPLEMENTARY | Operating Under The Influence | ☐ |

| 10. STATUS (CHECK ONE) | | | | 11. IS FURTHER POLICE ACTION REQUIRED? | | 12. IF CASE IS CLEARED, HOW CLEARED (USE THIS BOX FOR SINGLEOR FIRST CLEAR-UP OF MULTIPLE CLEAR |
| --- | --- | --- | --- | --- | --- | --- |
| CLD | UNFD | NOT CLD | CLD EXE | ☑ YES ☐ NO | ☑ ARREST PROSECUTE ☐ REPORT REFERRED TO PROSECUTOR ☐ COMPLAINANT REFUSED TO PROSECUTE ☐ STATION ADJUSTMENT ☐ OTHER EXCEPTIONAL |
| ☑ | ☐ | ☐ | ☐ | | |

the collision happened, and that he didn't see the pontoon before the collision. Yost also stated that he had a few drinks a Famous Freddie's prior to leaving, and that he had a few drinks earlier at the sand bar on Petite Lake around 1500 HRS.

I then escorted Yost over to boat 5971 and had him sit down in the back seating area, where I conducted boating field sobriety tests. Prior to conducting my first test, I asked Yost to recite the alphabet starting from the letter P ending at Z. Yost thought for approximately 7 seconds where after such time, he began reciting starting on Q, but finished without missing any other letters to Z. I then conducted the Horizontal Gaze Nystagmus test which Yost failed (see Alcohol and/ or Drug Report). I then conducted the Finger Count Test, and Hand Pat Test which Yost failed (see Alcohol and/ or Drug Report). I then administered a PBT (preliminary breath test) which came back with a PBT reading of .093. Subsequently I placed Yost under arrest for operating under the influence (OUI). Yost was handcuffed double locked and checked for snugness. At approximately 2220 HRS, I began my 20 minute observation of Yost. Soon after Deputy Rompala and I transported Yost back to the Marine Base. At Approximately 2256 HRS and after reading the warning to watercraft operator, Yost submitted to a breathalyzer which came back with his BAC being a .071.

After such time Deputy Frank, Deputy J. Paoletti and I transported Yost to Condell Hospital in Libertyville, IL for a blood and urine sample. At 0100 HRS on 27 May 2012 the Blood and urine samples were obtained. While still at Condell Hospital Yost uttered that he might have been on plane when the accident occurred, but still wasn't sure. Yost began expressing remorse, and inquired about the status of Mrs. Renzulli. At 0145 HRS, I notified the on-call assistant states attorney and eventually spoke with ASA Grindel. After careful review of the incident, ASA Grindel advised me to charge Yost with the class A misdemeanor OUI. ASA Grindel explained that due to the extensive injuries sustained by Mrs. Renzulli, and after the lab results come back, the states attorney's office will entertain the possible upgrade to a class 4 felony. After speaking with ASA Grindel, Yost was then transported to the Lake County Jail at 0335 HRS without further incident. Yost's initial charges were operating under the influence, and reckless operation.

All Evidence was submitted into evidence storage.

The Illinois Department of Natural Resources Police will be investigating, and reconstructing the accident.

Nothing Further At This Time.



| | 13. CONT. ON CONT. FORM ☐ | 14. ARREST MADE ☑ YES ☐ NO | 15. REPORTING OFFICER WILL FOLLOW UP ☑ YES ☐ NO | 16. WARRANT OBTAINED ☑ YES ☑ NO ☑ DENIED |
| --- | --- | --- | --- | --- |
| Reporting Officer: | Init. PF | I.D. # 10568 | Approving Officer: | I.D. # 1553 | DATE: 05/30/12 | TIME: 930 pm |

12-6837

LAKE COUNTY SHERIFF'S OFFICE
POLICE RECORD
No. 570756

COURT/PLACE/DATE | BOND | INCIDENT | VIOLATION | VEHICLE | DEFENDANT | COMPLAINT

LAKE COUNTY SHERIFF'S OFFICE
POLICE RECORD
No. 570755

COURT/PLACE/DATE | BOND | INCIDENT | VIOLATION | VEHICLE | DEFENDANT | COMPLAINT



EXHIBIT
2

12-6837

## Intox EC/IR-II
## Subject Test

LCSO MARINE UNIT
Serial Number: 012048
Test Number: 76
Test Date: 05/26/2012
Test Time: 22:51 CDT
Operator Name: FREE
Operator ID: 10568
Subject Name
YOST,BRIAN D
Subject D.O.B.:
Subject Sex: Male
Drivers License Number

Drivers License State: IL
Arresting Officer: FREE
Arresting Officer ID: 10568
Arresting Department
LAKE COUNTY SHERIFF
County Name: LAKE
Citation Number: 570755
System Check: Passed

| Test | g/210L | Time |
|------|--------|------|
| BLK | .000 | 22:53 |
| SUBJ | .071 | 22:56 |

Test Status: Success

Operator Signature

═══════════════════════════

## Intox EC/IR-II
## Scheduled
## Certification

LCSO MARINE UNIT
Serial Number: 012048
Test Number: 74
Test Date: 05/01/2012
Test Time: 07:00 CDT
Dry Gas Target: .079
Lot Number: 06712082J1
Exp Date: 05/05/2014
System Check: Passed

| Test | g/210L | Time |
|------|--------|------|
| BLK | .000 | 07:01 |
| CHK | .084 | 07:02 |
| BLK | .000 | 07:03 |
| CHK | .084 | 07:03 |

Test Status: Success

Test Status: Success



EXHIBIT
3



**OFFICE OF THE SHERIFF**
*Lake County, Illinois*

**MARK C. CURRAN, JR.**
**SHERIFF**

*25 S. Martin Luther King Jr. Ave.*
*Waukegan, Illinois 60085*
*Phone: (847) 377-4000*
*Fax: (847) 360-5796*

# MARINE UNIT
## CONSENT TO DRAW BLOOD

Report # 12-06837

The Undersigned hereby (consents) refuses consent (circle appropriate language) to an analysis of blood drawn from his person on the 27 Day of May , 20 12 , at 0100 Condell Hospital , Illinois. The purpose of the analysis is to determine the blood alcohol content of the blood at the time the blood was drawn.

Signature

Witness by: #10568

A solution of soap and water was used to clean the area for blood withdrawal. The amount of blood withdrawn, 10cc's or 2 vials, drawn.

Signature of qualified person: _____
(Doctor - Nurse - Technician)

Printed name of qualified person: Dr. Olivia Stiger

Signature of Deputy: _____

Printed name of Deputy: E./FREE #10567

Date and Time: 05/07/12  1AM

*"SERVING THE PEOPLE OF LAKE COUNTY WITH PRIDE"*


EXHIBIT
4



# Northeastern Illinois Regional Crime Laboratory

1000 Butterfield Road, Suite 1009, Vernon Hills, IL 60061
Phone: (847) 362-0676  Fax: (847) 362-0712

Board President
Steve Balinski

Executive Director
Garth Glassburg

Sheriff Mark Curran
Lake County Sheriff's Office
25 S. Martin Luther King Ave.
Waukegan, IL 60085

**Subject:** Accident Investigation
**Agency Case #:** 12-06837
**Case Officer:** FREE RICHARD
**Submission Date:** 05/30/2012

**Laboratory Case #:** 12-2256
**Laboratory Report #:** 1
**Report Date:** 6/5/2012

**Case Names:**   Brian D Yost

The following evidence was submitted in a sealed condition:

**ITEM 01**
(BY1)       Exhibit 01

Two tubes of blood.  One tube will be retained by the laboratory for a period of six months from the date of submission as required by Section 1286.320 (g) of the Illinois Register Department of State Police Notice of Adopted Rules.  The tubes are designated as being collected from the following individual:

Brian D. Yost.

**RESULTS**

**Instrumental analysis of the above exhibit detected a blood ethanol concentration of:  0.036 g/dL (36 mg/dL %).**

Exhibit 02

Two containers of urine.  One container will be retained by the laboratory for a period of six months from the date of submission as required by Section 1286.330 (h) of the Illinois Register Department of State Police Notice of Adopted Rules).  The containers are designated as being collected from the following individual:

Brian D. Yost.

**RESULTS**

Instrumental analysis of the urine exhibit failed to detect the presence of the following drugs and/or classes of drugs:

Cannabinoids
Cocaine and/or Metabolite
Phencyclidine
Opiates

12-0837

Blumberg No. 5191   EXHIBIT
5

Lab Case                   12-2256
Lab Report #                   1
Analyst          Courtney L. Sinkuler, M.S.

                Amphetamines
                Barbiturates
                Benzodiazepines
                Methadone

                Section 5-9-1.9 of the Unified Code of Corrections (730ILCS) authorizes a
                criminal laboratory analysis fee of $150.00 to be imposed for persons adjudged
                guilty of an offense in violation of Section 11-501 of the Illinois Vehicle Code.

Please pick up all appropriate exhibits at your earliest convenience.

Reviewer                                   Forensic Scientist
                                  Courtney L. Sinkuler, M.S.

# Illinois Boating Accident Report

**Diagram of Accident:** If applicable, diagram exactly what happened. Show the direction / location of boats involved before, during and after accident.

**Diagram not to scale**



**Brief Synopsis of Accident:** Synopsis for USCG database use.

All damage estimates are based on field observations or owner statements and are not intended for insurance or restitution purposes.

Brian Yost, Megan Murphy, and their passengers got in two boats docked at Famous Freddies to leave. Yost was operating vessel #1, a Glastron motorboat, owned by Murphy, and Murphy was operating a Donzi owned by Yost. Murphy and the Donzi were not involved in the accident, but Murphy witnessed the collision. Murphy and Yost were traveling Northwest out of Meyers Bay. Murphy was ahead of Yost by several boat lengths and to his starboard side. Murphy throttled the Donzi up bringing it on plane as she noticed a pontoon boat (vessel #2) in front of her, so she operated the Donzi to the port side of the pontoon boat. Murphy recalled looking back and seeing the bow of vessel #1 still up in the air as it collided with vessel #2.

Yost recalled looking forward and not seeing any obstructions prior to throttling vessel #1 up. The bow of vessel #1 was up in the air as Yost was attempting to plane the boat out when the collision occurred. Yost said he never observed vessel #2 until after the collision.

Bruno Renzulli was operating vessel #2 traveling Southeast towards Meyers Bay. Renzulli said he observed vessel #1 and the Donzi leave the docking area and travel towards his boat at a high rates of speed. Renzulli estimated he only had three seconds from first observing vessel #1 leaving the dock until the collision. Renzulli said he had no time manuver his pontoon boat to avoid the collision.

Dena Renzulli was struck by vessel #1 and thrown into the water. Ryan Lay and Bruno Renzulli jumped into the water and assisted Dena Renzulli until the Lake County Marine Unit and Fox Lake rescue arrived on scene. Dena suffered broken ribs, a broken leg, a fractured pelvis, a lacerated spleen, and lacerations on her face. She was transported to the hospital.

The Lake County Marine Unit contacted Conservation Police Officer Tepovich and myself approximately twenty five minutes after the accident requesting assistance and we arrived on scene approximately twenty five minutes after receiving the call. Vessel #2 was the only watercraft still on the lake and only two passengers / witnesses remained along with a Lake County Marine boat and deputies Foy and Strand. CPO Tepovich and I remained with vessel #2, obtained written statments from Elvira Schwartz and Jeffery Iannacco, and had the boat towed to a secure facility. Schwartz recalled seeing vessel #1 from approximately three car lengths away traveling towards the pontoon boat she was on until it collided with the boat. Lake County Sheriff deputies Ron Michaels, Strand, and Foy were at the docks of Famous Freddies with the passengers of vessel #1 and the Donzi boat when we arrived after securing the pontoon boat. Deputy Michaels had gotten statements from the passengers and we also had the passengers complete written statements of their accounts of the incident. Lake County Sheriff's Marine deputies arrested Yost for operating a watercraft while under the influence of alcohol and careless operation. Neither Yost nor Bruno Renzulli were on scene when we arrived and we had no contact with either of them that night. The Lake County Marine deputies advised they would be handling the criminal investigation and requested we handle the accident investigation. CPO Tepovich and I also had vessel #1 towed to a secure facility so we could investigate the accident. The point of impact and initial engagement indicate a head on collision of the two vessels. The degree of rotation of vessel #2 in relation to vessel #1s ability to clear vessel #2 indicates an estimated speed of 16-20 mph for vessel #1. Renzulli estimated his speed was below 10 mph and stated that the top speed of his pontoon boat is only 21 mph. There is no evidence to indicate either vessel was changing their direction of travel or turning prior to impact. Both operators of vessels #1 and #2 were traveling on the same paths towards each other and failed to give way to the other vessel which resulted in the collision. A detailed account of the investigation will be attached as a supplemental to this report. Photographs and a powerpoint presentation of the damage to each vessel have been downloaded on CDs due to the fact that there are too many to attach with this report.

EXHIBIT 6

**VEHICLE TOW REPORT**                                                      **LAKE COUNTY SHERIFF'S DEPARTMENT**

| 1. DAY | DATE OCCURRED 5/26/2012 | TIME 9:42 PM | 7. NATURE OF COMPLAINT Boat Accident/ OUI Arrest | | | 3. Complaint No 12-06637 |
|---|---|---|---|---|---|---|
| 4. DAY | DATE REPORTED 5/26/2012 | TIME 9:43 PM | 5. COMPLAINANT NAME LAST LCSO Free *10568 | FIRST 3528 | MIDDLE | 6. | 7. C |
| 8. DAY | DATE DISPATCHED 5/26/2012 | TIME 9:44 PM | 9. ADDRESS OF COMPLAINANT 25 S. Martin Luther King Ave, Waukegan, IL | | Apt | 10. COMPL. SOCL SEC. NO |
| 11. DAY | DATE ARRIVED 5/26/2012 | TIME 9:53 PM | 12. RACE    SEX    D.O.B.    HOME PHONE    BUS. PHONE    OTHER PHONE | | | |
| 13. DAY | DATE COMPLETED 5/27/2012 | TIME 4:00 AM | 14. LOCATION OF INCIDENT Pistakee Lake/ Myers Bay/ Fox Lake, IL | | | |

| 15. UNMOVED OR UNUSED FOR A PERIOD OF TIME. POLICE NOTICE AFFIXED | 16. ☑ ACCIDENT | MOTOR VEHICLES WHICH ARE NOT DRIVEABLE AND THE OPERATOR NOT PRESENT OR UNKNOWN |
|---|---|---|
| ☐ DATE | 17. ☐ RECOVERED STOLEN | OWNER NOTIFIED ☐    NOT NOTIFIED ☐ |
| 18. ☐ PARKED ON PRIVATE PROPERTY WITHOUT CONSENT OF PROPERTY OWNER/AGENT. VEHICLE OWNER UNKNOWN | 19. ☐ HAZARD | MOTOR VEHICLE OBSTRUCTING TRAFFIC FLOW |

| 20. ☑ EXTENDED HOLD FOR INVESTIGATION | NAME: | 21. IF CONNECTED WITH ARREST - DESCRIBE - INCLUDE ALL CHARGES |
|---|---|---|
| ☐ IMPOUND | REASON: | ○ Offense    ● Arrest |
| 23. NAME OF TOWING AGENCY Electric Harbor | PHONE NUMBER (847) 356-2747 | Operating Under The Influence Reckless Operation |
| 24. LOCATION VEHICLE TOWED SAA | PHONE NUMBER (847) 356-2747 | |

| 25. V.I.N. GLA19961L900 | 26. LICENSE NO. | STATE IL | MO/YR 02/2014 | 27. VEHICLE STICKER NO.    CITY | MO/YR |
|---|---|---|---|---|---|
| 28. YEAR 2000 | 29. MAKE Glastron | | 30. MODEL Carlson | 31. BODY STYLE Boat | 52. COLOR White |

| 33. | SEX | RACE | D.O.B. AGE | HEIGHT | WEIGHT | HAIR | EYES | COMP. | OFFENDER'S NAME & ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| ☑ Prisoner | M | W | 10/17/1975 36 | 600 | 150 | Brown | Blue | Fair | Yost, Brian Douglas |
| ☑ Driver | | | | | | | | | |
| ☐ Owner → | MURPHY MEGAN M | | 35. ADDRESS | | | | 36. BUS. PHONE | 37. BUS. PHONE | |

## VEHICLE INVENTORY

| EXTERIOR | ENGINE COMPARTMENT | INTERIOR |
|---|---|---|
| 36. DOORS LOCKED    NO ☑ YES ☐ | ENGINE MISSING    NO ☑ YES | KEYS IN CAR    NO ☑ YES ☐ # 1 |
| EXTERIOR DAMAGED NO ☐ YES ☑ EXPLAIN | BATTERY MISSING    NO ☑ YES | IGNITION PULLED    NO ☑ YES |
| GLASS BROKEN    NO ☑ YES ☐ EXPLAIN | CARBURETOR MISSING    NO ☑ YES | GLOVE BOX LOCKED    NO ☑ YES |
| HUB CAPS MISSING    NO ☑ YES ☐ # | GENERATOR MISSING    NO ☑ YES | SEATS MISSING    NO ☑ YES # |
| TIRES MISSING    NO ☑ YES ☐ # | AIR CLEANER MISSING    NO ☑ YES | CUSHIONS MISSING    NO ☑ YES # |
| WHEELS MISSING    NO ☑ YES ☐ # | RADIATOR MISSING    NO ☑ YES | REAR SEAT CUSHION PULLED    NO ☑ YES |
| OTHER - SPECIFY    NO ☑ YES ☐ | TRANSMISSION MISSING NO ☑ YES | RADIO MISSING    NO ☑ YES |
| | STARTER MISSING    NO ☑ YES | LIGHTERS MISSING    NO ☑ YES # |
| TRUNK LOCKED    NO ☑ YES ☐ EXPLAIN | | TAPE PLAYER IN CAR    NO ☑ YES |
| SPARE TIRE IN VEH.    NO ☑ YES ☐ UNK. ☐ | | INTERIOR DAMAGED    NO ☑ YES .3 |
| TOOLS IN VEHICLE    NO ☑ YES ☐ UNK. ☐ | | OTHER - SPECIFY    NO ☑ YES ☐ |

| 41. PERSONAL PROPERTY IN VEHICLE DESCRIBE UNDER REMARKS ☐ NO ☐ YES | 42. INVENTORIED BY Michaela | I.D. NO. 666 | 43. DATE 5/26/2012 | TIME 11:10 PM |
|---|---|---|---|---|

| 44. REMARKS (EXPLAIN DAMAGE) | | UCR NO. | COMPLAINT NO. |
|---|---|---|---|
| Damage to the Bow Area. Following was inventoried; Anchor, Electric Pump, Paddle, 14 PFD's, Tool Box, Raft, Keys (in glove box), Type IV, 2 Fire Extinguishers, Hand Coolers, CD Player, Flashlight in Glove Box, Cooler Containing Gatorade, 15 cans of Beer, 5 empty, 1 Bottle of Mikes Hard Lemonade, Bottle of Jose Cuervo Margarita Mix. | | | |

| 45. EXTRA COPIES ☐ Liq. Comm. ☐ B. & ☐ S.A. ☐ Victim's Asst. ☐ Evidence Officer ☐ Other | | |
|---|---|---|
| 46. LEADS / LEIN/ NCIC No. | 47. SENT    DATE    TIME | 48. CANCELLED DATE    TIME    TAPED NARR ☐ |

| 49. REPORTING OFFICER LCSO Free | Init. | I.D. NO. 10568 | 50. SUPERVISOR APPROVING | I.D. NO. 1553 | DATE 05/30/12 | TIME 930 pm |
|---|---|---|---|---|---|---|

**RECORDS COPY**


EXHIBIT 7