# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN YOST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 3816 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| LAKE COUNTY SHERIFF MARK ) | |
| CURRAN, in his official capacity, LAKE ) | |
| COUNTY DEPUTY RICHARD FREE, and ) | |
| LAKE COUNTY, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This case stems from a boat collision on Pistakee Lake in the town of Fox Lake, Illinois and the subsequent arrest and prosecution of Plaintiff Brian Yost, who was driving one of the boats involved in the collision. Yost brings this § 1983 suit alleging that Lake County Sheriff's Deputy Richard Free arrested and detained him without probable cause after the collision and that Deputy Free and Sheriff Mark Curran maliciously prosecuted him. Yost also seeks indemnification from Lake County. Now before the Court is Defendants' motion to dismiss the amended complaint. Because the Court finds that Deputy Free had at least arguable probable cause to arrest and detain Yost, qualified immunity defeats the § 1983 claims. The Court declines to exercise jurisdiction over Yost's state claims. Thus, the motion to dismiss [20] is granted.

# BACKGROUND[1]

On May 26, 2012, Yost was driving a boat on Pistakee Lake in the Village of Fox Lake, Illinois, when it collided with another boat. After the accident, Deputy Free arrived on the scene and questioned Yost. Deputy Free stated in his report that Yost was slurring his speech and exhibiting other signs of intoxication during their interaction. Yost claims that he was not impaired and that he did not slur his speech. The police report also indicates that Yost's breath smelled of alcohol and that Yost had spilled an alcoholic drink on himself, but Yost alleges that he had not spilled a drink on himself and that he "did not have an overwhelming odor of alcohol on his breath." Doc. 19 ¶ 19. Additionally, the arrest report states that Yost admitted to having consumed a few drinks at two separate locations prior to the collision, but Yost denies making these statements.

Deputy Free administered a preliminary breath test and field sobriety tests on Yost. Although the police report indicates that Yost failed multiple field sobriety tests, Yost asserts that he did not fail any of the tests. Deputy Free recorded that Yost's preliminary breath test revealed a reading of .093. But Yost alleges that the actual "results of [the] preliminary breath test were less than .08, as demonstrated, in part, by the results of the breathalyzer test." *Id.* ¶ 24. Deputy Free and Yost then went to a police station where, less than one hour after the preliminary breath test, Deputy Free administered a breathalyzer test on Yost. The breathalyzer indicated that Yost's blood alcohol content was .071. But Yost claims that Free knew that "that specific breathalyzer overstated the results by at least .005." *Id.* ¶ 26. Yost further alleges that "additional variables associated with the breathalyzer could mean that plaintiff's actual blood

---

[1] The facts in the background section are taken from the amended complaint. When considering the motion to dismiss, the Court accepts all of Yost's factual assertions as true. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

alcohol content was actually as low as .043." *Id*. Yost then went to a hospital where he provided a blood and urine sample to test for alcohol and narcotics. The results of these tests came back ten days later, on June 5, 2012. The test reported no narcotics in Yost's system and a blood alcohol concentration of .036. Yost was charged criminally with operating a watercraft under the influence and reckless operation of a watercraft; he was ultimately acquitted.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The amended complaint alleges claims against Deputy Free pursuant to § 1983 for unlawful arrest (Count I) and unreasonable detention (Count II). Yost also brings state law claims against Deputy Free and Sheriff Curran for malicious prosecution (Count III) and against Lake County for indemnification (Count IV). Defendants assert that even taking all of the facts alleged in the amended complaint as true and disregarding additional facts contained in the

3

police report, it is clear that Yost had been drinking prior to the accident and that he was driving a boat when it collided with another boat, and therefore Deputy Free had probable cause to arrest and detain Yost for either operating a boat under the influence of alcohol or carelessly operating a watercraft. Defendants also argue that Deputy Free is protected by qualified immunity.

Illinois law prohibits operating a watercraft while "[t]he alcohol concentration in such person's blood or breath" is at or above the statutory limit to drive a car of .08, or when the individual is otherwise "under the influence of alcohol." 625 Ill. Comp. Stat. 45/5-16(A)(1). Additionally, the Illinois Boat Registration and Safety Act defines criminal careless operation of a watercraft as "operat[ing] any watercraft in a careless or heedless manner so as to endanger any person or property or at a rate of speed greater than will permit [the driver] in the exercise of reasonable care to bring the watercraft to a stop within the assured clear distance ahead." 625 Ill. Comp. Stat. 45/5-1. Careless operation of a watercraft is defined as a Class B misdemeanor, 17 Ill. Admin. Code 2010.95(b)(3), with a maximum penalty of six months in prison and a fine of $1,500, 730 Ill. Comp. Stat. Ann. 5/5-4.5-60.

Probable cause defeats § 1983 claims for unlawful arrest and detention "if the arresting officer had probable cause to make the arrest for any reason." *Maniscalco v. Simon*, 712 F.3d 1139, 1144 (7th Cir. 2013) (citing *Devenpeck v. Alford*, 543 U.S. 146, 154–54, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)). Thus, even if Deputy Free did not have probable cause to arrest Yost for operating a boat under the influence of alcohol, Free will prevail if he had probable cause to arrest Yost for any offense. *Id.* (although defendants did not have probable cause to arrest plaintiff for driving under the influence, the false arrest claim fails because defendants had probable cause to arrest plaintiff for disorderly conduct); *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011) ("The existence of probable cause to arrest a suspect for any offense, even one

4

that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim.").

Additionally, qualified immunity protects an officer from civil liability stemming from discretionary functions so long as his conduct does not violate a clearly established statutory or constitutional right about which a reasonable officer would have known. *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Thus, qualified immunity protects Deputy Free if a reasonable officer could have believed that he had probable cause to arrest and detain Yost in light of the information Deputy Free possessed at the time. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Courts have referred to this standard as "arguable probable cause." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 715 (7th Cir. 2013). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). And "because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' [the Supreme Court] repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (first alteration in original) (citation omitted). At this stage, the Court must consider only the factual assertions included in the amended complaint when evaluating Deputy Free's knowledge at the time of the arrest and whether those facts amount to arguable probable cause.

Because the Court finds that qualified immunity defeats Yost's § 1983 claims, the Court will consider only whether Deputy Free had arguable probable cause to arrest and detain Yost. Defendants contend that the facts contained in the amended complaint establish arguable probable cause to arrest and detain Yost for operating a watercraft under the influence of alcohol

or for carelessly operating a watercraft. The Court agrees. The amended complaint reveals that Yost was driving a boat as it collided with another boat and that Yost had been drinking. At some point, after arriving on the scene, Deputy Free administered a preliminary breath test. Although Deputy Free recorded that this test resulted in a reading of .093, Yost alleges that "[t]he results of the preliminary breath test were less than .08, as demonstrated, in part, by the results of the breathalyzer test." Doc. 19 ¶ 23. After being transported from Pistakee Lake to a police station, Deputy Free administered a breathalyzer test, which determined that Yost's blood alcohol content was .071. The amended complaint challenges this figure as well, asserting that Deputy Free "knew the results of that specific breathalyzer overstated the results by at least .005." *Id.* ¶ 26. Yost also alleges that breathalyzers are inherently unreliable such that his blood alcohol level at the time of the test could have been as low as .043.

The amended complaint therefore acknowledges that Yost had a blood alcohol content "less than .08" when he was assessed at the scene and between .043 and .066 when he submitted to a breathalyzer examination at the police station. *Id.* ¶¶ 24–26. But it is well settled that an individual's blood alcohol level declines steadily once alcohol is absorbed into the body. *See Missouri v. McNeely*, --- U.S. ----, 133 S. Ct. 1552, 1560, 185 L. Ed. 2d 696 (2013) ("It is true that as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated."); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 623, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) ("[A]lcohol and other drugs are eliminated from the bloodstream at a constant rate and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible."

(citation omitted)). Thus, a reasonable officer would expect Yost's blood alcohol level to have declined from the time of the accident through his interaction with Deputy Free.

When coupled with the fact that Yost was at the wheel of a boat when it collided with another, either the preliminary breath test showing that Yost had a blood alcohol level near the statutory limit to drive or the subsequent breathalyzer test indicating that Yost's blood alcohol level was, at the very least, more than half the statutory limit would provide at least arguable probable cause to support an arrest for operating under the influence or for careless operation of a watercraft. *See Vander Leest v. Steffens*, No. 09-C-125, 2010 WL 5439717, at *8–9 (E.D. Wis. Dec. 28, 2010) (granting summary judgment to defendant on plaintiff's claim that his arrest for driving under the influence was unlawful where, "[a]t the hospital [plaintiff] was tested and showed a BAC of .031 (after some time had passed)"); *Briggs v. Holsapple*, No. CIV. 08-6037-KI, 2009 WL 395134, at *6–7 (D. Or. Feb. 11, 2009) (breathalyzer test showing blood alcohol concentration of .000 did not vitiate probable cause premised on other factors when the test was administered over an hour after the police arrived). Because Yost's own allegations demonstrate that Deputy Free could have reasonably concluded that Yost was impaired or was driving carelessly at the time of the accident, qualified immunity defeats Yost's § 1983 claims.

Yost's remaining claims—Counts III and IV—are grounded in state law. Because the Court dismisses Yost's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims and therefore dismisses them without prejudice. *See Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ( "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the reasons outlined above, the motion to dismiss [20] is granted. Counts I and II are dismissed with prejudice. *Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993) ("[t]he district court correctly dismissed plaintiffs' suit with prejudice based upon Kelly's qualified immunity"). Counts III and IV are dismissed without prejudice.

Dated: December 9, 2014

_____
SARA L. ELLIS
United States District Judge